You may proceed. Thank you. Good morning, Your Honors. May it please the Court, Joseph Klappich for the appellants, and I'd like to reserve two minutes for rebuttal, if I may. This is an appeal from a summary judgment in an age discrimination action. The appellants presented compelling evidence that Circle K deliberately concealed open directors' positions from qualified and interested older employees and chose instead to secretly fast-track and fill those director positions with their preferred younger candidate. The evidence in the case shows, includes direct statements of discriminatory intent, hiring of an unqualified employee, promotion in violation of internal policies, false statements being made about that promotion, and extensive efforts to replace older workers with unqualified younger workers. And this is exactly the kind of evidence that the case law has said creates tribal issues of fact in age discrimination cases. Now the trial court here granted summary judgment because it mistakenly excluded evidence on what I'm sort of lumping together as two critical facts. The first critical fact was appellants' evidence that Circle K had violated its own internal practice of posting job openings when it promoted Angelus to the director positions. If let's assume for a moment that that evidence was appropriately excluded, does it make a difference in your, at the, on the bottom line? Uh, no. I mean, I'm, I'm willing to argue that it does. I'm trying to figure out. Right. As we deconstruct your, your problems with the district court's approach, which ones are essential to your argument and which ones just add to your argument? Uh, the, I would, I would state our arguments in, on this issue as being twofold. The first argument would be that even if this evidence had been properly excluded, there was still sufficient evidence to create tribal issues of fact here because there was admissible evidence that one, Circle K deliberately failed to publicize the director positions, and that's at pages 374 and 75 of the record. And that Circle K knew that the appellants were qualified and interested in being promoted to those positions. Yes. I'm trying to figure out what the failure to publish adds to the case. I mean, it's a nice fact if, if, if admitted, but they, they had expressed an interest in the position. There's no, there's no contest about that. And the position was open and nobody contacted them ostensibly because other evidence may show that because of their age. So I'm wondering why that fact is essential to your case. It's not. And, and I, to follow that, we believe that the Blow and the Mostafa cases provide that when an employer has an open position and knows that there are employees who are both qualified and interested in that position, the employer can't just secretly fill that position with someone else. I think, see, that's why, that's why I'm pushing back. I think the employer probably can, as long as he doesn't fill that in violation of the statute, which is to say preferring somebody or preferring somebody or grading somebody down because of their age.  And there's, there's no general requirement that, that positions be advertised. Correct. But then what we would, then what we would be talking is what's the evidence of discriminatory intent. That's right. And that's what I'm saying is that since you have other evidence, I'm not sure why this is the most important part of your case. Oh, well, I, again, I, if it's, it's an issue, because what the trial court said was you didn't apply for the positions, right? And we said we didn't apply because we didn't know about it. And our position is first, not knowing about it, even the fact that they filled the position without giving us an opportunity excuses us from having to apply for it. And then second of all, there was a practice here, an internal practice that was violated. So I think that's the first, the first issue that, that we would talk about. Let me spend one more second on this. Is there a requirement under the statute that one apply for the positions or merely that one expressed an interest in, in the promotion of the position? Right. And this is what we believe an error is of the district court here is that there is no requirement that you apply if they know that you're interested in the position and they fill it without giving you an opportunity to apply. The way the case law describes it is if they prevent you or, or discourage you from applying, the one case very colorfully said if there was a sign, no Irish need apply, if you were Irish and didn't apply, then you wouldn't have to show that, that, you know, applying in that case was a futile act. Here we were, my clients were prevented from applying. And, and I think the second critical evidence, I can sort of advance the argument, was the fact that the trial court excluded on hearsay ground, the evidence that Wilkins made the decision to promote Angeles in December, 2019. And that evidence was also not inadmissible hearsay. And there's two components to it. Let's start with the evidence of who made the decision. We have various forms of evidence on that. One is Maloney's testimony about the custom and practice. He said there's a three-step process. There's a posting. There's the, the supervisor sign off in which he actively and personally participated in. And then there's the interview and, and selection that's done by the vice president here, Wilkins. And so that was his testimony. And because Maloney was personally involved in that promotion process, our position is that that's admissible as a party admission under the Murkowski case and the Mara cases, which we cited in our brief. And then in addition to that, we don't think it's. It's not even really a party admission, is it? Because he's not, he's not testifying about what anybody said. He's just describing a fact about what happened, right? Correct. And that would be another one of our arguments that I was going to get to, too. That it's not even hearsay because all he's doing is describing the procedure that's normally followed. And then his testimony is, this is the procedure that's normally followed. We followed that procedure in other examples. We started following it here because we had these two-day meetings in which I advanced the appellants as saying they were highly qualified and should be approved, you know, should be considered for this position. And then all of a sudden I found out this position was filled. And he says, and I called up Maloney, and this is the second, I'm sorry, I called up Wilkins. And he says, this is the second part that was excluded as hearsay, which I don't believe is hearsay. It's also a party admission. And Wilkins, I said, hey, why didn't we follow the regular process here? And Wilkins said, I made the decision. And what about, you also have, I believe it was evidence that Angelus had said that Wilkins hired him. Why isn't that hearsay? And the district court said that was excludable as hearsay. Why is that wrong? I would believe that it's hearsay, but not inadmissible hearsay. And the reason why I would say that is because Angelus is personally participating in this process. He's the applicant, right? He's the one who's applying for the job, right? And he then is in a position to state that he was hired, I was hired by Wilkins. Wilkins was the one who interviewed me. He told me I was hired. And here we have- He's in a position to state it. But what exception to the hearsay rule gets in his out-of-court statement? It's a party admission. And I think here the evidence is really quite stunning because as Randall Smith testified- To be a party admission, it has to be by the party's agent or employee, which he was, about something within the scope of the agency or employment relationship. And what he's, what the statement is about is about his applying for a new position that he didn't have at the time he applied for it. So how is that within the scope of his employment? Well, I think what you have here is you have both the applying employee and the departing, the applying supervisor, let's call it that, and the departing supervisor. They're both, and this goes more to the when than the who. Well, but separate the two. I mean, you've already told us why Wilkins is, why you think Wilkins' statement comes in. Angelus is making an out-of-court statement, not within the scope of his responsibilities as an employee. I think that's what I, that's the, I'm inclined to think that Judge Miller's got his finger on the problem here. So tell me why with respect to him, not with respect, not with respect to whether it was corroborated by Wilkins. I would argue that it is within the scope of his responsibilities as a newly promoted supervisor to explain to his employees when he was promoted and by whom. And so, you know, when you promote an employee and he comes in, and by the way, and he held a team Skype meeting in which he said, I've been promoted, I'm going out to California, make sure you do, you know, you send all your emails to this guy because he's going to be kind of filling in during this transition period. I think under those circumstances, it's within the scope of his employees, I'm sorry, of his duties as an employee to explain, you know, what happened through the promotion process. He comes in one day and he says to his fellow employees, I'm your, I'm going to be your new boss. Right? Or he says to his former, the employees he formerly supervised, I'm no longer going to be your new boss. Right? I think that's within the scope of his, his duties. I think all that's true, but is it also true that saying I was promoted by Mr. Wilkins is within the scope of his, that's, that's the question. Right. I think for, for Angelus and, and Bonert, the, the, the incoming and outgoing supervisors, I think the important thing there is for the when. It really goes more to the when. When, when he comes forward and says in December 2019, I've been promoted, I think that's evidence that he was promoted in 2019 and that can be considered for that purpose. So that even to the extent it's hearsay, which I don't know that it is, it's just the fact that he said it at that time. But, but I would, I would agree that the stronger evidence is Maloney's statements to Wilkins and, and the policy, the policy that was in place that was departed from at least with respect to the first two steps of the process that Maloney testified to. And it was within the scope of Maloney's duties because he's a supervisor and we have the cases we cited, the Murkowski, the Mara, the simple case, which is discussed in those cases. All of these cases say that when a, when a supervisor is explaining an expert, is describing an explanation that was given to him by his supervisor about what happened in this promotion process, that that's not inadmissible hearsay. In fact, this is- Can I, can I just take, ask you to, because you're, we've, we've, we've used up your time. We'll give you two minutes for rebuttal, but I just want to ask you to address an issue that maybe isn't before us, but if this case were to move forward, if you were to win here, you've got three plaintiffs, there's only, they couldn't all have been hired. So how would that work going forward and how do you see damages working? Oh boy. I think that's sort of a bit beyond the scope of, of here. I think it would have to- I think that, you know, there are three plaintiffs and, you know, what would have happened and which of the three plaintiffs should win, you know, or should they all win something because they were all discriminated against, even though it's impossible, it's hard to tell exactly which one would have been promoted. Okay. All right. Thank you. Ms. Rodriguez? Thank you, Your Honors. May it please the Court. I want to be, I want to be brief.       I want to be as direct as possible and concise. I think that the key issues that we should respond to in sort of reverse order if I may, number one, the cases that appellant cites to support the notion that there was a policy related to job postings being required all include written policies or at least in- Does it matter? That's why I asked. That's why I was asking your friend this. A position was open. We, nobody doubts that. There's evidence, may or may, finder of fact may or may not believe it, that each of these three people who seem to be facially qualified had expressed an interest in promotion. Then there is evidence, I think, you can contest this as we go on, that one reason they may not have been considered was because of their ages. Does it matter whether there's a policy of posting or not? See, I'm having trouble with the district court's notion that, well, you didn't apply. And whether or not there was a policy of posting open things or not, surely the statute can't be circumvented simply by not posting and then favoring people of a younger age. So I'm trying to figure out, I was asking the same question of your friend, but I'm asking it of you now. Why is it terribly important whether there was a policy of posting or not? Understood, Your Honor. We agree, and it's clear from the record in the district court's 33-page, very well-reasoned decision that plaintiff failed to show that there was any discriminatory animus. Well, let's turn to that in a second. You started off with this notion that, you know, they're wrong, you don't have to post things. The cases don't say that yet. Maybe if there's a written policy, you have to. And I'm pushing back on that because they had an open position that these people say they weren't considered for because of their age. And I'm not sure why it matters if they can show that, that there was a policy of posting or no policy of posting. So tell me why posting is at all relevant here. Sure. I don't think we believe it is necessarily relevant. But the district court relied on it. The district court said, you never applied. And their response was, well, we didn't apply because you didn't post it. And I'm saying, I'm not sure why the district court's reliance on the absence of the application moves us anywhere. And I think to the extent it did, it may have erred. Yes, Your Honor. Bonner announced his resignation in January, January 15 of 2020. And Angeles obviously raised his hand for it. And what I think that the district court refers to also are previous openings for this type of position that were filled by a variety of people, both over the age of 50 and under the age of 50. And in those cases, the plaintiffs also didn't raise their hand and express interest. So well, but you can't, you're not really saying that there's no contest that these people weren't interested in this position. They, they presented evidence that they were interested in the position. So I'm just not sure why we need to, the real question for me in this case, and so I'd like you to get to it, is, is there sufficient evidence of discriminatory animus? And there's, what concerns me there, aside from whatever presumptions arise from differences in ages, is a fairly robust record about ageist comments made by Circle K personnel. And I'm trying to figure out why they're not enough to get them past summary judgment to a juror. Your Honor, I believe you're referring to comments ascribed to Wilkins, who was not involved in the decision whatsoever. And the record's clear that Simonelli made the decision to... Is the record clear on that, or is the record, is, do you have good evidence that he was, but there's some evidence that Wilkins was involved? No evidence has been presented that Wilkins was involved. What about, what about the statement from Maloney that in the normal course, the decision was made by the vice president to whom the hire would report, which would have been Wilkins. Why isn't that evidence that Wilkins was the decision maker? Well, Your Honor, I think that at least from what I heard from appellants counsel talking about the, for example, statements that Angeles made at the end of 2019, that he's moving to California, it seems like we're conflating the first promotion that he got to the DNT position that is what brought him out to California. And at least the way I heard it, there was some confusion about which decision we're talking about. But if there's confusion... I'm saying... If there's confusion... On the appellant side... Is that enough to get us past summary judgment? I was trying to be diplomatic. I felt the appellant was confusing or conflating those two promotions. And when Angeles made the comment on the phone call or the video conference that appellants counsel is referring to, it's clear that Angeles was talking about the DNT position, which is what brought him to California in the first place. And what is clear in the record is that appellants argue that Wilkins made the decision to promote Angeles in December of 2019, which is factually impossible from the admissible and uncontroverted evidence in the record, because Bonner didn't make the decision to resign until January 15 of 2020. So I wasn't asking about Angeles' comments, I was asking about Maloney's. I had understood that Maloney testified about what the general practice was for hiring when a regional director position became available. And he didn't say, and it was Wilkins, but from his testimony about who would do it in the normal course, one could infer that it was Wilkins. Why doesn't that support the conclusion that it was Wilkins? Well, I think Maloney was testifying about a general practice, not what actually happened in this case. So if he were to say, the vice president of the United States normally picks the head of the National Security Council, and we were trying to figure out who picked the head of the National Security Council, but there was no other evidence, wouldn't that be some evidence that the vice president of the United States picked that person? I'm not sure that corporate America is as organized as the vice president.  It better be all better organized. Well, we'll leave that for another day, Your Honor, but I think that that's not what happened in this case. And I think that that's what's important. And there was no doubt from the admissible evidence of who was involved in the decision. And not only did Wilkins not make the decision for the corona position, but he had no influence in the decision. And Simonelli made that clear that he was the decision maker. And I think what actually happened is what's relevant in this matter. I would be happy to respond to any other questions that the court is considering. Well, I mean, maybe just to sort of go back to the point that we started with. So in the normal course, a prima facie case requires the plaintiff to show that he or she applied for the position, right? Do you agree that if the employer doesn't tell the employee or it doesn't tell the potential applicant that the position is available, that they don't need to show that they applied to make a prima facie case? No, I think that the issue here was that Bonner made it clear that he was leaving. So it was... Well, I mean, no, this is just a question about the law, not about what happened in this case, just in general. Is an employer excused in making a prima facie case? Let me start over. Is an applicant or a person who was not hired, it's a person who was not hired, a plaintiff, excused from showing that they applied for the job if they can show that the employer didn't tell them that the job was available? Well, so, Your Honor, I think it's two parts, right? The applicant has to show that they were qualified and that they applied for the job. But just focus on the part he's asking about, application. And application, I think, is about showing interest. It's not necessarily that you have to handwrite an application. And certainly, if the appellants in this case had raised their hand and showed interest in the position, there'd be evidence that they were considered for the position. Let me, now I want to extend your time a little bit on this. Not this case, so you don't have to tell me the facts are different. You have an employer who says, I'm never going to post positions because it's really a pain in the neck to deal with all these eager employees. So I'll never post them. But that employer along the way prefers people because of age or defers people because of age. So are they outside the act because nobody ever knows to apply for the positions? Can't raise their hands? It seems to me just not to make any sense. I'm not sure that that's the way it works in a company. I'm not asking you the way it works. See, you're describing, we're asking you for a legal construct. And you're saying, you at least got to raise your hand and say, I'm interested. You may not have to formally apply. But what if you don't know the position is open because your employer doesn't post it, whether out of ill motive or otherwise? Are you then not protected by the act? An employee can express interest in a position, whether it's open or not. Well, what if there's record evidence there, the employees had sort of had expressed interest even before the position came open and had, it seems the record reflects that they were, there was evidence that upper management knew they had been rated, the performance had been rated highly, that they were due for a promotion and that they were all interested in a promotion. So that was, and that was known, did they, why temporarily did they have to re-express that interest when the position came open but was not posted and was quickly filled by someone else? Of course, Your Honor. And I was, I was responding to that question, but to your point, assuming arguendo that they had raised their hand and that that evidence bears out, at the end of the day, Angelus clearly had the supervisory experience in that position. Well, that's a different issue. We're focusing on your contention that as a matter of law, that the plaintiff has to show interest in the position. But, and you said, you know, the position got announced, it's opening, and they didn't raise their hand temporarily, right? Perhaps you're correct that there wasn't a, at post-announcement, let's assume you're correct, there's no evidence that post-announcement they said, I want his job. But what if there is evidence that pre that announcement, they had expressed interest generally in a promotion of that kind? Why isn't that enough as a matter of law? Sure. I understand that. And I believe that is, it's true that if the decision-maker understood that a person had an interest that they should and would be considered. I'm not sure that the evidence shows that the decision-maker. But if it did, that would be potentially enough to satisfy the interest requirement that you're saying is in the law. I would think so, yes. And if the decision-maker knows that a person's interested, then they would be considered. I think in this case, the evidence doesn't show that the decision-maker had any idea that they were interested. But even more importantly, assuming arguendo, that the decision-maker knew, I think at the end of the day, Mr. Angelis's experience in that corollary position in the Southeast and his extra supervisory experience beyond that, that the appellants had, falls squarely under, for federal purposes, under the Wilborn decision that shows that where the selected employee possesses more supervisory experience than the other candidates, there's no discrimination. And under state law, under FEHA 12940A5A, where promotions within existing staff hiring or promotion on the basis of experience and training does not amount to unlawful employment decision. All right. Thank you, Counsel. Thank you, Your Honors. Mr. Klappich, rebuttal. Thank you, Your Honors. Just a couple of brief points. First, my friend on the other side makes the argument that there's no evidence that Wilkins made the decision. That's sharply disputed. As we've talked about, there's Maloney's testimony about the regular process. There's Wilkins' own admission to Maloney that he made the decision. And there's also the common sense. Wilkins is the supervisor. Why would the supervisor not make the decision on who's going to be hired to be his direct report? Can I ask you to turn to something that was touched on by your friend only at the end? Let's assume that you get through the whole analysis, and now it's their burden to come forth with evidence that this wasn't pretextual, in effect. And they have a qualified person. He's got some warts on his resume, as I suspect everybody in the room does. But he's not unqualified, and he's been working in a position that would seem to suggest he could move up to this new one. Tell me what creates a fact issue on pretext. I think the fact issue for pretext here is several fold. First, we have direct statements of discriminatory intent by the decision makers and the decision maker supervisor. We have Wilkins saying things like, you know, you should really think about retiring or getting too old for the business now that you're older. Supervisors were telling these employees that the company's not embracing these older employees, and that's exactly the kind of evidence that was found to create tribal issues of fact in the Abrams and Heibert case. So does it matter that the person actually promoted? See, I'm a little concerned in your briefing that you say, well, my people are really good, and this guy has problems with his history, and therefore, that must have been a pretext. And I'm not sure that we do that in the pretext analysis. After all, they're entitled to promote a less qualified person as long as it's not because of age. So the real question is, is there evidence that it was because of age? Right. I mean, the question is, was the decision motivated by discriminatory intent? That question is an issue of fact when there's disputed evidence on both sides. Here we have evidence of discriminatory intent. We have evidence that they didn't follow the normal hiring procedures. Our position is they basically fast-tracked an unqualified or underqualified younger employee over much more qualified and much better suited employees because of age. We have, in addition to that, false statements that were being made. My friend on the other side said, well, it's factually impossible. We don't think it's factually impossible. We think they lied about it. We think that there was a decision that was made before it was announced. And that's why we have Angeles, who's giving Skype meetings, which he's saying he's been promoted before the, quote, records show that the position became open. And then the last point, I think, is we have a lot of evidence here of a lot of actions that are taken and a lot of pressure by senior management to get rid of, you know, very well-qualified older employees in favor of underqualified younger employees. And our position is that all of that evidence combined at least gets us past the summary judgment stage where all we're talking about is can a trier of fact believe that discrimination occurred here? All right. Thank you, counsel. We thank both counsel for their arguments, and the case is submitted.
judges: HURWITZ, MILLER, SUNG